J-S74001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Y.R.L.P., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.E.F., MOTHER | : : : : : : : | |
| | : | No. 2193 EDA 2019 |

Appeal from the Decree Entered July 17, 2019
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2019-A0066

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED FEBRUARY 28, 2020**

L.E.F. (Mother) appeals from the decree entered July 17, 2019, and dated July 16, 2019, that granted the petition filed by the Montgomery County Office of Children and Youth (OCY or Agency) seeking the involuntary termination of Mother's parental rights to Y.R.L.P. (Child), born in September of 2015.  We affirm.

Initially, we note that on April 25, 2019, the Agency filed its petition for termination of Mother's parental rights and alleged grounds under 23 Pa.C.S. § 2511(a)(1), (2), (8) and (b).  The trial court provided a review of the factual and procedural history of this case and its reasoning for terminating Mother's

_____

[*] Former Justice specially assigned to the Superior Court.

parental rights by attaching the notes of testimony from the July 16, 2019 hearing to its Pa.R.A.P. 1925(a) opinion.[1]  The trial court stated:

> With respect to the birth [M]other, the [c]ourt similarly concludes that Section 2511(a)(1) is not applicable here, as there has not been a settled purpose of relinquishing a parental claim or refusal and failure to parent that existed for more than six months preceding the filing of the petition.
>
> Section 2511(a)(8) is a bit more complicated with respect to the birth [M]other because the reasons that the [C]hild was removed from the home, although they relate to the extreme and severe and very troubling abuse by a third party, also relate to the fact that the birth [M]other at that time provided insufficient protection for the [C]hild under all of the circumstances.  Her own testimony was that she and Mr. Darby,[2] I believe – but certainly she -- was smoking marijuana the night before.  She was asleep at the time of the injuries.  When the [C]hild was returned home to her, she didn't notice his severe injuries.  She allowed him to go back to sleep.  And it wasn't until several hours later when she woke up that she realized that he was unresponsive and took him to the hospital.  She deserves credit for taking him to the hospital and getting him the medical care that he then needed, but the [c]ourt is concerned about her inattention initially and her inability to recognize initially the severe injuries that he had suffered.
>
> Because this is related to her marijuana use, it was significant that the Office of Children and Youth in this case from the very beginning of the case -- and she acknowledged this, as did the caseworker -- emphasized with her the need to discontinue

_____

[1] At the same hearing, B.J.P.'s (Father) parental rights to Child were also terminated.  Father filed a separate appeal with this Court, which is addressed in a separate memorandum at No. 2449 EDA 2019.

[2] Mr. Darby was Mother's boyfriend, who was caring for the Child at the time of the Child's injuries, which included Stage V lacerations to the Child's kidney and his spleen and fractures to the Child's clavicle and ribs.  These serious injuries were the result of Mr. Darby's violent assault of the Child, causing the Child to remain in the hospital for over a month.  ***See*** N.T. 7/16/19, at 15-16, 89-90.

the marijuana use and the need to make sure that she was in mental health treatment as well as drug and alcohol treatment.

Her own testimony confirmed, as does the records of OCY, that she repeatedly tested positive for marijuana use and that she uses marijuana regularly, sometimes weekly, at one time when she was younger, daily. And she has clearly not participated in treatment to recover from marijuana use and to reduce that so that she could be a more attentive and effective and protective [M]other for a [C]hild who certainly initially had significant special medical needs as a result of his very severe injuries.

But this case is not only about marijuana use, although that is a significant factor that [Mother] hasn't in any meaningful way addressed during the entire duration of this case for almost two years. In addition, her visits have been somewhat inconsistent, although initially they were very consistent. But most concerning, since late March of 2019, birth [M]other has had only six visits with her [C]hild, despite many being offered. And she hasn't effectively found a way either to arrange for transportation, to request transportation, to advocate for herself with the Office of Children and Youth to make sure that the visits happen.

She did testify that the transportation by public transportation from where she lives is lengthy and somewhat difficult, but I didn't hear any testimony that she advocated for a solution or even explained to her caseworker what the problem was and that transportation assistance would permit her to attend visits with her [C]hild.

The visits with her [C]hild initially were the thing that she did the best on and where she had quality, happy relations with the [C]hild and happy visits, from the testimony, and they appear to have enjoyed each other's company.

Yet over the last several months, since March of 2019, she's attended extremely few visits, missed several visits, and didn't problem-solve when her phone was apparently not working in June to use her mother's phone or find another way to reach out either to the caseworker or to the foster mother to try and make sure that she could have a visit and have use of a phone in order to confirm her visits.

In addition, birth [M]other provided some evidence of employment, but it is one letter at one moment in time in January in her mother's home that was never substantiated with any pay stubs or any other documentation to confirm that she has continued to be productively employed and to have sufficient funds to provide for her [C]hild.

She did complete a parenting class, which is to her credit. But similarly to the drug use, she made appointments for mental health treatment, and her testimony indicated that she missed all of the appointments in 2019, at least my notes reflect, except for one in April. She missed her June appointment, her May appointment, and her February and March appointments for mental health treatment.

Under all the circumstances of this case, the birth [M]other has not demonstrated sufficient commitment to and preparation for and persistence in attending to all of the reasonable requests that OCY imposed.

She also failed to work with the Time Limited Family Reunification worker on any of the goals that OCY set for her.

While I believe that she loves her [C]hild and wishes to be reunited with him, she has not taken sufficient steps and most concerning in the last six months with respect to her mental health treatment and with respect to the visits has really fallen off on the most important issues that she needed to address in order to establish that she could provide a safe, loving, stable home where she would have adequate income and resources to support her [C]hild and where she would have the adequate attention to provide for him and to meet all of his needs.

Given the unfortunate fall-off in her visits since March of 2019, the [c]ourt concludes that the bond between the birth [M]other and the [C]hild has been eroded and that she is not functioning and has not functioned over the last almost two years as the parental figure providing for his needs and meeting his needs.

N.T., 7/16/19, at 203-08.

The trial court concluded that:

- 4 -

With respect to the birth [M]other, L.E.F., under Section 2511(a)(2), I find that she has an incapacity to parent, and she has not demonstrated her capacity to meet all of the requirements of parenthood that OCY has reasonably asked her to try and demonstrate.

I don't find grounds for termination with respect to the birth [M]other under Section 2511(a)(1), but I do find with respect to the birth [M]other a ground for termination under Section 2511(a)(8) in that the conditions that led to the removal of the [C]hild in the home, particularly her mental health issues, her marijuana use, and the fact that that caused her to be inattentive and gave the Office of Children and Youth cause for concern from the very beginning and encouraged her to seek treatment for the drug use and treatment for her mental health issues from the very beginning have not been adequately addressed in the almost two years since September of 2017.

*Id.* at 209-10.

With regard to section 2511(b) of the statute, which centers on the needs and welfare of the Child, the trial court explained:

With respect to the birth [M]other, the [c]ourt finds that there is love and affection between the birth [M]other and the [C]hild, undoubtedly, but the failure to attend visits in the last several months consistently since March, together with the failure to act in a parental capacity to provide for his needs, to make a home for him, and to provide for him consistently, and to consistently make visits all have significantly undermined that bond, and the [c]ourt concludes that it would not be to his detriment to sever the bond with the birth [M]other….

By contrast, I will evaluate at this point the testimony regarding [the Child's] bonding and attachment to his health and well-being in the foster home.

The testimony … both of the caseworker Ms. Plakis and of Ms. Martin indicated that he is happy, thriving, and bonded in the foster home, that he is loved by the foster parents and by the foster siblings, that he turns to the foster parents to meet his needs, to provide for him for comfort, to provide for him when he's hungry and when he's tired, that all of his needs are met by

the foster parents, and that there is a strong, reliable, and stable parental bond with both of the foster parents and this [C]hild as well as a healthy relationship with the foster siblings.

Therefore, from all of the evidence and testimony that I considered this day, I find that … termination of the birth [M]other's parental rights will best serve the needs and welfare of the [C]hild, and termination of the birth [M]other's parental rights … will not irreparably harm the [C]hild.

*Id.* at 211-13.

On appeal, Mother presents the following issues for our review:

1.) Whether there is sufficient evidence to support the findings of [the trial court] that the [A]gency proved by clear and convincing evidence the requirements of 23 Pa.C.S. [§] 2511(a)(2) for the involuntary termination of [b]irth [M]other's parental rights?

2.) Whether there is sufficient evidence to support the findings of [the trial court] that the [A]gency proved by clear and convincing evidence the requirements of 23 Pa.C.S. [§] 2511(a)(8) for the involuntary termination of [b]irth [M]other's parental rights?

3.) Whether [the trial court] abused its discretion in finding that the developmental, physical and emotional needs and welfare of [Child] will be best served by the termination of [b]irth [M]other's parental rights pursuant to 23 Pa.C.S. [§] 2511(b), when there is a strong and loving bond between [b]irth Mother and the [C]hild, and severance of that bond will cause irreparable harm to the [C]hild?

Mother's brief at 4.

We review an order terminating parental rights in accordance with the

following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient

evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879

A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. *In re Adoption of T.B.B.*,

835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights

is governed by section 2511 of the Adoption Act, which requires a bifurcated

analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his

or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Mother's parental rights pursuant to section 2511(a)(2), (8) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, we analyze the court's decision to terminate under section 2511(a)(2)

and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by

terminating Mother's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

causes of the incapacity, abuse, neglect or refusal cannot or will
not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation
omitted). "The grounds for termination due to parental incapacity that cannot
be remedied are not limited to affirmative misconduct. To the contrary, those
grounds may include acts of refusal as well as incapacity to perform parental
duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations
omitted).

Relative to section 2511(a)(2), Mother begins her argument by
suggesting that the Child's injuries, which initially caused the Agency's
interaction with the family, were not foreseeable and that she had no reason
to anticipate her boyfriend's actions toward the Child. She also asserts that
she submitted to a psychological evaluation, both for her mental health issues
and her drug and alcohol issues, and that she began counseling. However,
Mother claims that the counseling problems were the fault of financial
problems and the death of a therapist. As for the required housing and a job,
she contends that she has had both throughout the case. Additionally, Mother
claims that her visits with Child went well, but did acknowledge that in the last
year she missed some visits due to a transportation issue, which she contends
was due to the Agency's termination of help. Essentially, Mother asserts that
she merely needs more time and that with help from the Agency, she will be
able to remedy the problems facing her that will allow for the Child's return to
her care.

Despite Mother's assertions as to the actions she has taken over the two years since the Child has been in care, she does not address her incapacity due to her continuing substance abuse and her mental health issues. Mother overlooks her marijuana use, shown through consistent positive testing results, and her own admission of continuing use and her failure to obtain treatment. She also does not assert that she has complied with the recommended mental health treatment. Moreover, Mother attributed her inconsistent visitation during 2019 to transportation issues, having met with the Child only 6 out of 17 offered visits. This is contrary to Mother's consistent visits at the beginning of the Child's placement in September of 2017, which has affected the bond between Mother and the Child. Namely, Mother contends that if given more time and with assistance from the Agency, she will be able to correct the problems that prevent the Child's return to her custody.

Having reviewed the record, we conclude that it supports the findings of the trial court that Mother has not provided the Child with the essential parental care, control and subsistence necessary for his mental and physical well-being, and that Mother is unable or unwilling to remedy the causes of her parental incapacity, neglect or refusal. While the trial court noted Mother's few positive accomplishments, it is clear that Mother will not, or cannot, become a capable parent for the Child at any point in the foreseeable future. Thus, we conclude that the Agency has carried its burden of proving the

statutory grounds for termination under subsection 2511(a)(2). Therefore, Mother is not entitled to relief.

Next, we consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to section 2511(b). We have discussed the required analysis under section 2511(b) previously in this memorandum. *See In re Adoption of J.M.*, 991 A.2d at 324. Mother's argument centers on her assertion that she and the Child have a significant bond, that their visits went well, and that the Child looks forward to the visits and cries when the visits are over. However, she does acknowledge that the bond has diminished over time since she has not visited with the Child on a regular basis and since he has been living with his foster family. However, Mother essentially contends that severing the bond between her and the Child is not in the Child's best interests.

Initially, we note that section 2511(b) does not require a formal bond analysis. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2019). Moreover, expert testimony is not required; rather, a social worker or caseworker can evaluate whether a bond exists with a biological parent and/or with a foster parent. *Id.* To address this issue, we look to the trial court's discussion of the facts contained *supra* in this memorandum, wherein the court found that Mother's failure to consistently attend visits with the Child and her failure to provide for his needs and welfare have undermined the bond that had existed. The court also discussed the Child's relationship with the foster parents and

foster siblings to whom he looks to have his needs met. Based in part on the testimony from two of the caseworkers, the court concluded that the bond between the Child and the foster parents meets all his needs and that the termination of Mother's parental rights would not irreparably harm the Child.

We have reviewed the record and conclude that the trial court's findings and conclusions are supported by the evidence before the court. Thus, we determine that the Agency has carried its burden regarding section 2511(b). Again, we conclude that Mother is not entitled to relief.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/20